UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
-------------------------------------------------------------X
SUSAN MAHONEY,                                                      Case No.

                        Plaintiff,                           **COMPLAINT**

        -against-
                                                     **Jury Trial Demanded**

RIPE, INC. d/b/a Restaurant X & Bully Boy Bar,
HCC CATERERS, INC. d/b/a Xaviars X20
on the Hudson, PXK SOURCES INC.,
GOOD VODA LLC, PETER KELLY and
BRADLEY MILLER,

                        Defendants.
-------------------------------------------------------------X

       Plaintiff Susan Mahoney ("Mahoney" or "Plaintiff") alleges against Defendants Ripe, Inc. d/b/a Restaurant X & Bully Boy Bar ("Restaurant X"), HCC Caterers, Inc. d/b/a Xaviars X20 on the Hudson ("X20"), PXK Sources Inc. ("PXK"), Good Voda LLC ("Good Voda"), Peter Kelly ("Kelly") and Bradley Miller ("Miller") (collectively, "Defendants" or "Xaviars Restaurant Group"), upon information and belief, as follows:

## NATURE OF THE CLAIMS

1. In response to celebrity chef Mario Batali being accused of sexual harassment, Kelly – Xaviars Restaurant Group CEO was quoted in December 2017 in www.lohud.com/story/life/food/2017/12/11/chefs-react-mario-batali-allegations/940188001/ as saying, "I'm appalled by this behavior wherever it exists but I am not surprised that someone in our industry has been called out on it… This is unacceptable and brutish behavior, and it is a stain on any industry it touches."

2. Unfortunately, Kelly failed to live up to his own words in his own place of employment. Mahoney - Xaviars Restaurant Group bookkeeper and Kelly's personal assistant was

sexually harassed by the Company Account – Miller.  When Mahoney complained of the sexual harassment to Kelly, Kelly dismissed Mahoney's concerns telling her, "Maybe he (Miller) felt he could just tell you "and "It was just one adult to talking to another adult."

3. Thankfully, the New York State anti-discrimination and anti-retaliation laws are intended to afford women the same rights as any other employee, and provide females with the dignity and respect they deserve in the workplace.  As such, this is an action in-part for declaratory, injunctive and monetary relief to redress Defendants' unlawful employment practices, including unlawful discrimination and retaliation committed against the Plaintiff.  The unlawful discrimination, hostile work environment and retaliation described herein was committed in violation of the New York State Human Rights Law ("NYSHRL").

4. Additionally, Mahoney – a non-exempt employee of the Defendants would often work in excess of forty hours per week and ten hours per day.  However, Mahoney was not provided a wage notice upon her hire or paid overtime or spread of hours, in violation of the Fair Labor Standards Act ("FLSA") and the New York Labor Law ("NYLL").

## JURISDICTION AND VENUE

5. This Court has subject matter jurisdiction over Plaintiff's claims under the FLSA pursuant to 28 U.S.C. § 1331 and 1343, because that claim arises under the laws of the United States.  This Court has supplemental subject matter jurisdiction over Plaintiff's related state law claims pursuant to 28 U.S.C. § 1367.

6. Venue is proper in this district pursuant to 28 U.S.C. § 1391(b) because a substantial part of the events or omissions giving rise to this action, including the unlawful employment practices alleged herein, occurred in this district.

7. This Court is empowered to issue a declaratory judgment pursuant to 28 U.S.C. §§ 2201 and 2202.

## PARTIES

8. Plaintiff Susan Mahoney ("Mahoney" or "Plaintiff") is a female individual who is a resident of Orange County in the State of New York.

9. Defendant Ripe, Inc. d/b/a Restaurant X & Bully Boy Bar ("Restaurant X") was and is domestic business corporation existing under the laws of the State of New York.

10. Restaurant X was and is authorized to conduct business in the State of New York.

11. Restaurant X has a principal place of business located at 117 North Route 303, Congers NY 10920.

12. At all times relevant to this action, Restaurant X has been a business or enterprise engaged in interstate commerce employing more than two employees and earning gross annual sales over $500,000.00.

13. Defendant HCC Caterers, Inc. d/b/a Xaviars X20 on the Hudson ("X20") was and is a domestic business corporation existing under the laws of the State of New York.

14. X20 was and is authorized to conduct business in the State of New York.

15. X20 has a principal place of business located at 71 Water Grant Street, Yonkers NY 10701.

16. At all times relevant to this action, X20 has been a business or enterprise engaged in interstate commerce employing more than two employees and earning gross annual sales over $500,000.00.

17. Defendant PXK Sources Inc. ("PXK") was is a domestic business corporation existing under the laws of the State of New York.

18. PXK was and is authorized to conduct business in the State of New York.

19. PXK has a principal place of business located at 71 Water Grant Street, Yonkers NY 10701.

20. At all times relevant to this action, PXK has been a business or enterprise engaged in interstate commerce employing more than two employees and earning gross annual sales over $500,000.00.

21. Defendant Good Voda LLC ("Good Voda") was is a limited liability corporation existing under the laws of the State of New York.

22. Good Voda was and is authorized to conduct business in the State of New York.

23. Good Voda has a principal place of business located at 71 Water Grant Street, Yonkers NY 10701.

24. At all times relevant to this action, Good Voda has been a business or enterprise engaged in interstate commerce employing more than two employees and earning gross annual sales over $500,000.00.

25. Defendant Peter Kelly ("Kelly") was and is a resident of the State of New York.

26. Kelly was and is the Owner, President and Chief Executive Officer of Restaurant X.

27. Kelly was and is the Owner, President and Chief Executive Officer of X20.

28. Kelly was and is the Owner, President and Chief Executive Officer of PXK.

29. Kelly was and is the Owner, President and Chief Executive Officer of Good Voda.

30. Kelly exercised control over the employment terms and conditions of Mahoney.  Kelly had and exercised the power and authority to (i) fire and hire, (ii) determine the rate and method of pay, (iii) determine work schedules and (iv) otherwise affect the quality of employment of the Plaintiff.  At all times, Plaintiff could complain to Kelly directly

regarding any of the terms of her employment, and Kelly would have the authority to effect any changes to the quality and terms of employees' employment. Kelly exercised functional control over the business and financial operations of Restaurant X, X20, PXK and Good Voda.

31. The acts of Restaurant X, X20, PXK and Good Voda charged in this Complaint were authorized, directed or accomplished by Kelly individually, by himself or his agents, officers, employees or representatives, while actively engaged in the management of Restaurant X, X20, PXK and Good Voda's businesses.

32. At all relevant times, Restaurant X, X20, PXK and Good Voda were and continue to be enterprises engaged in commerce within the meaning of the FLSA, the NYLL and the regulations thereunder.

33. At all relevant times, the work performed by Mahoney was directly essential to the businesses operated by the Defendants.

34. Defendant Bradley Miller ("Miller") was and is a resident of the State of New York.

35. Miller was and is employed by Restaurant X.

36. Miller was and is employed by X20.

37. Miller was and is employed by Xaviars Restaurant Group as an Accountant.

## **FACTUAL ALLEGATIONS**

<u>Wage Violations</u>

38. Defendants are primarily engaged in the restaurant and catering business in New York.

39. On or about December 2016, Mahoney commenced employment with the Defendants.

40. Mahoney was employed by the Defendants in a number of roles, including as a bookkeeper, personal assistant to Kelly and in a Human Resources capacity.

41. Mahoney's job responsibilities included but were not limited to: payroll, banking, making deposits and acting as a liaison to vendors.

42. Mahoney performed work for Restaurant X.

43. Mahoney performed work for X20.

44. Mahoney performed work for PXK.

45. Mahoney performed work for Good Voda.

46. Mahoney performed work for the Defendants at 117 N Route 303, Congers NY 10920.

47. Mahoney performed work for the Defendants at 71 Water Grant Street, Yonkers NY 10701.

48. Mahoney was paid in accordance with a $50,000.00 salary.

49. Mahoney was a non-exempt employee.

50. The Defendants did not provide a wage notice to Mahoney upon her hire.

51. The Defendants did not provide a wage notice to Mahoney annually.

52. During Mahoney's employment with the Defendants, Mahoney worked in excess of forty (40) hours per week and ten (10) hours per day.

53. Upon sincere information and belief, the Defendants did not have a time keeping system to track Mahoney's hours at work.

54. Mahoney often worked in excess of fifty (50) hours per week.

55. Although Mahoney worked over forty hours per week, Defendants failed to pay Mahoney at the required overtime premium rate.

56. Although Mahoney worked daily shifts in excess of ten hours, Defendants failed to pay Mahoney spread of hours.

Sexual Harassment, Hostile Work Environment and Retaliation

57. In approximately September 2017, Mahoney interacted with Miller for the first time.

58. At their second meeting in Mahoney's office at Restaurant X, Miller told Mahoney, I do everything with my son.  I take him and his friends to strip clubs and I wait outside.  Miller went on to further describe to Mahoney when his wife called while he was sitting outside the strip club.  Miller said, "Been there, done that."

59. Mahoney was shocked by the unwelcome comments by Miller.

60. Nonetheless, Miller continued to sexually harass Mahoney at another meeting several weeks later in Mahoney's office, where Miller explained to Mahoney that he took his son on another occasion to the strip cub with all of his son's friends.  Miller went on to explain that when he asked his son's friends where his son was, the friends said he was getting taken care of.

61. Mahoney would try to either stop Miller or change the subject, to no avail.

62. Miller would persist by telling Mahoney that you know what kind of women work in those strip clubs.

63. Miller also told Mahoney, "Women in general should have certain jobs"

64. Mahoney found Mahoney's comments offensive and highly inappropriate for the workplace.

65. In around late November 2017, Miller pulled his chair immediately next to Mahoney (while she was sitting behind her computer).  Miller, while sitting with his legs wide open, invaded Mahoney's personal space.  Miller then pulled his chair closer to Mahoney and leaned over to use the keyboard, leaning onto Mahoney's breast in the process.  Mahoney felt extremely uncomfortable.

66. On or about January 3, 2018, Miller told Mahoney at Restaurant X that he would be coming into the restaurant every Wednesday going forward.

67. Fearful that the sexual harassment would escalate, Mahoney mustered the courage to formally complain to Kelly.

68. On or about January 4, 2018, Mahoney complained in-part, "Brad (Miller), while working with him has a made a point of telling me about him bringing his son to a strip club and other sexual statements. There have been derogatory remarks, innuendos as I perceived gestures made towards women with whom work at these places and just women in general… As I tried to change the conversation and made a point of letting it be known I was uncomfortable it didn't deter him. He continued to tell me how his wife had called on of the times that he was waiting outside for his son and friends and he had told her been there done that… Please advise as to what course of action you would like me to take. I do not feel comfortable working under these conditions. It truly has made on edge and is making me sick. My stomach is in nots today… Please advise as to the course of action you recommend."

69. Immediately after Mahoney complained, Kelly told Mynor (Restaurant X General Manager) on speaker phone, "What the fuck is wrong with you? Now I have to get a fucking lawyer."

70. On or about January 6, 2018, Kelly and Mahoney had a meeting. Mahoney again explained to Kelly the sexual harassment she was forced to endure at work.

71. Kelly took handwritten notes during the meeting.

72. Kelly sided with Miller (the male harasser) during the meeting, telling Mahoney, "Maybe he (Miller) felt he could just tell you", "If I told you half of what Marybeth tells me what she does for her son" and "It was just one adult to talking to another adult."

73. Shortly after the January 6, 2018 meeting, an advertisement for a job opening for Mahoney's position was placed on Helpwanted.com and indeed.com.

74. The ads (which were later taken down) described a job opening for a full charge bookkeeper and full time office administrator.

75. On or about January 22, 2018, Mahoney confronted Kelly about the ads placed her position. Instead of taking Mahoney's complaint seriously, Kelly told Mahoney, "You're going to have to find a way to work him (Miller)" and "How can I trust you now?"

76. Subsequently, Mahoney emailed Kelly to complain of a continued hostile work environment.

77. On or about February 20, 2018, Defendants constructively terminated Mahoney's employment.

78. Defendants' actions and conduct were intentional and intended to harm Plaintiff.

79. As a result of the Defendants actions, Plaintiff felt extremely humiliated, degraded, victimized, embarrassed, and emotionally distressed.

80. As a result of the Defendants actions, Plaintiff has suffered economic loss.

81. As a result of the Defendants actions, Plaintiff suffered severe emotional distress.

82. As Defendants conduct has been willful, reckless, outrageous, intentional and/or malicious, Plaintiff also demands punitive damages.

## FIRST CAUSE OF ACTION
### (FLSA – Unpaid Overtime)

83. Plaintiff hereby repeats and realleges the preceding paragraphs as though they were fully set forth herein.

84. By failing pay overtime at a rate not less than one and one-half (1.5) times the regular rate of pay for work performed in excess of 40 hours per week, Defendants have violated and continue to violate the FLSA, 29 U.S.C. §§ 201 *et seq.*, including 29 U.S.C. §§ 207(a)(1) and 215(a)(2).

85. The foregoing conduct, as alleged, constitutes a willful violation of the FLSA within the meaning of 29 U.S.C. § 255(a).

86. Defendants' failure to pay overtime caused Plaintiff to suffer loss of wages and interest thereon.  Plaintiff is entitled to recover from Defendants her unpaid overtime premium compensation, damages for unreasonably delayed payment of wages, liquidated damages, reasonable attorneys' fees, and costs and disbursements of the action pursuant to 29 U.S.C. § 216(b).

## SECOND CAUSE OF ACTION
### (NYLL – Unpaid Overtime)

87. Plaintiff hereby repeats and realleges the preceding paragraphs as though they were fully set forth herein.

88. Defendants willfully violated the Plaintiff's rights by failing to pay overtime compensation at a rate of not less than one and one-half times the regular rate of pay for hours worked in excess of forty each week, in violation of the NYLL and regulations promulgated thereunder.

89. Defendants' failure to pay overtime premium compensation caused the Plaintiff suffer loss of wages and interest thereon.  Plaintiff is entitled to recover from the Defendants her unpaid overtime compensation, damages for unreasonably delayed payment of wages, liquidated damages, reasonable attorneys' fees, and costs and disbursements of the action pursuant to NYLL §§ 663(1) *et seq.*

## THIRD CAUSE OF ACTION
### (NYLL – Unpaid Spread of Hours)

90. Plaintiff hereby repeats and realleges the preceding paragraphs as though they were fully set forth herein.

91. Defendants willfully violated the Plaintiff's rights by failing to pay compensation in an amount equal to one hour's pay at the relevant minimum wage in all instances where the Plaintiff worked either a split shift or more than ten hours per day, in violation of the NYLL §§ 650, *et seq.*, and the regulations promulgated thereunder including N.Y. Comp. Code R. & Regs. Tit. 12, §§ 137-1.7 (2010), 146-1.6 (2012).

92. Defendants failure to pay spread-of hours compensation caused the Plaintiff to suffer loss of wages and interest thereon.  Plaintiff is entitled to recover from Defendants her unpaid spread-of-hours compensation, damages for unreasonably delayed payment of wages, liquidated damages, reasonable attorneys' fees and costs and disbursements of the action pursuant to NYLL §§ 663(1) *et seq.*

## FOURTH CAUSE OF ACTION
### (NYLL – Failure to Provide Wage Statement)

93. Plaintiff hereby repeats and realleges the preceding paragraphs as though they were fully set forth herein.

94. Defendants have willfully failed to supply the Plaintiff with an accurate statement of wages as required by NYLL, Article 6, § 195, containing the dates of work covered by that payment of wages; name of employee; name of employer; address and phone number of employer; rate or rates of pay and basis thereof, whether paid by the hour, shift, day, week, salary, piece, commission, or other; gross wages; hourly rate or rates of pay and overtime rate or rates of pay if applicable; the number of hours worked, including overtime hours worked if applicable; deductions; and net wages.

95. Due to the Defendants' violations of the NYLL, Plaintiff is entitled to recover from Defendants one hundred dollars ($100) per employee for each workweek that the violations occurred or continue to occur, up to a maximum of five thousand dollars ($5,000) per employee, as provided for by NYLL, Article 6 §§ 190 *et seq.*, liquidated damages as provided for by the NYLL, reasonable attorneys' fees, costs, pre-judgment and post-judgment interest, and injunctive and declaratory relief.

## FIFTH CAUSE OF ACTION
### (Discrimination in Violation of NYSHRL)

96. Plaintiff hereby repeats and realleges the preceding paragraphs as though they were fully set forth herein.

97. By the actions described above, among others, Defendants have discriminated against Plaintiff because of her gender / sex, in violation of NYSHRL.

98. As a direct and proximate result of Defendants' unlawful and discriminatory conduct, Plaintiff has suffered and continues to suffer harm for which she is entitled to an award of monetary damages and other relief.

## SIXTH CAUSE OF ACTION
### (Hostile Work Environment in Violation of NYSHRL)

99. Plaintiff hereby repeats and realleges the preceding paragraphs as though they were fully set forth herein.

100. By the actions described above, among others, Defendants have discriminated against Plaintiff and created a hostile work environment because of her gender / sex, in violation of NYSHRL.

101. As a direct and proximate result of Defendants' unlawful and discriminatory conduct, Plaintiff has suffered and continues to suffer harm for which she is entitled to an award of monetary damages and other relief.

## SEVENTH CAUSE OF ACTION
### (Retaliation in Violation of NYSHRL)

102. Plaintiff hereby repeats and realleges the preceding paragraphs as though they were fully set forth herein.

103. By the actions described above, among others, Defendants have retaliated against Plaintiff by, *inter alia*, constructively terminating her in violation of NYSHRL for engaging in protected activity.

104. As a direct and proximate result of Defendants' unlawful and discriminatory conduct, Plaintiff has suffered and continues to suffer harm for which she is entitled to an award of monetary damages and other relief.

## PRAYER FOR RELIEF

**WHEREFORE**, Plaintiff prays that the Court enter judgment in her favor and against Defendants, containing the following relief:

A. A declaratory judgment that the practices complained of herein are unlawful under applicable federal and state law;

B. An injunction and order permanently removing and clearing information to the contrary contained in Plaintiff's employee file and restraining Defendants from engaging in such unlawful conduct;

C. An award of compensatory damages as a result of Defendants' failure to pay overtime compensation pursuant to the FLSA, the NYLL and the supporting regulations;

D. An award of compensatory damages as a result of Defendants' failure to pay spread of hours for each daily shift worked in excess of ten hours pursuant to the NYLL;

E. An award of compensatory damages as a result of Defendants' failure to provide a wage notice pursuant to the NYLL;

F. An award of compensatory damages as of result of Defendants' violation of the NYSHRL;

G. An award of damages in an amount to be determined at trial, plus prejudgment interest, to compensate Plaintiff for all monetary and/or economic damages, including but not limited to, the loss of past and future income, wages, compensation, and other benefits of employment;

H. An award of damages in an amount to be determined at trial, plus prejudgment interest, to compensate Plaintiff for all non-monetary and/or compensatory damages, including but not limited to, compensation for her mental anguish, humiliation, embarrassment, stress and anxiety, emotional and psychological pain and suffering, emotional and psychological distress and the physical manifestations caused;

I. An award of punitive damages;

J.  An award of prejudgment and post-judgment interest;

K.  An award of costs and attorneys' fees pursuant to applicable law; and

L.  An award of such other relief that the Court deems just and proper.

## JURY DEMAND

Plaintiff hereby demands a trial by jury on all issues of fact and damages stated herein.

Dated: April 30, 2018
New York, New York

Respectfully submitted,

**Akin Law Group PLLC**

By:  */s/ Robert. D. Salaman*
_____
Robert D. Salaman
Zafer A. Akin

45 Broadway, Suite 1420
New York, NY 10006
Telephone:  (212) 825-1400
Facsimile:   (212) 825-1440
rob@akinlaws.com
zafer@akinlaws.com

*Counsel for Plaintiff*